Case 17-4138 Charles Dipasquale v. James Hawkins, et al. Oral argument, not to exceed 15 minutes per side. Ms. Sprick for the appellant. And I forgot to say, if you represent the appellant, tell us how much time, if you want to reserve time for both, please tell us how much, even if you were to settle it up with the clerk. Thank you, Your Honor. May I please report? My name is Dawn Frick and I represent the appellant, James Hawkins, on this matter, and I ask to reserve three minutes for rebuttal. If the court would like, I can proceed with a brief recitation of the facts that are relevant to the claims against my client. You're probably pretty familiar with the facts. I think you'd use your time better saying something else. Okay, thank you, Your Honor. As this court is aware, this matter is before the court on a denial of absolute and qualified immunity to my client on a motion for judgment on the pleadings on a claim for a malicious prosecution. And thus the issue is, was there sufficient facts pled in the complaint in order for the court to draw a reasonable inference that my client would be liable for malicious prosecution? And in this instance, we would argue that there was not, and that in fact he would be entitled to absolute immunity because the allegations in this complaint dealt only with those that are relevant, only with the testimony in grand jury proceedings. And that in addition, he would be entitled to qualified immunity. So in order to review that, we have to look at what are the elements of the malicious prosecution. There are obviously four elements, and the first two are the two elements that are primarily at issue in this appeal. The first element being whether the criminal prosecution was initiated against Mr. DiPasquale and whether Hawkins may have influenced or participated in that decision to prosecute. In this particular instance, the only allegations in the complaint with respect to that are on paragraph 32, in which it's pled that Hawkins, Detective Hawkins in the case, presented the case to the grand jury. And then in paragraph 49 of the complaint, there's a formulaic recitation of the elements that simply state that Hawkins may have influenced or participated in the decision to prosecute. There are no other specific allegations. And the procedural posture of this case was a 12C motion, right? Yes, Your Honor. So it was a motion for judgment on the pleadings. What is the effect, just out of curiosity, of the attachments to the complaint? Well, we understand that the court can consider the attachments to the complaint. However, the attachments to the complaint I don't believe are sufficient to even indicate that he initiated the proceedings or made influence or participated. And how do you understand initiated the proceedings? Could an officer initiate proceedings, and this is just a purely legal question, not about what he did, by simply passing on documents? No, Your Honor. I believe that this court has indicated that a police officer who's just passing on the documents to a prosecutor, that's not sufficient to initiate. And I'm not saying, again, I'm not talking about this complaint, but that he knowingly passes on false information to a prosecutor, knowingly being the key word, and doesn't disclose it. If, in fact, the officer passed on documents that he knew were false, and he knowingly did that, that may be closer to an influence or participation. But here, there's no allegations in the complaint that any of the documents that were passed on were knowingly false, or even the fact that they were false at all. There's no allegations that the statement made by Mr. Harris was false. In fact, there's no allegation in the complaint that, in fact, Mr. DePasquale did not take the vehicle. Well, he could clearly pass on false statements if he didn't know, right? Or he could pass on false statements if he knew, but disclosed it to the prosecutor. I would agree with that. Here, there's no allegations at all about any discussions with the prosecutor. The prosecutor isn't even mentioned. Can I ask one more question? I'm sorry. Did anyone move – and I should know this, and I apologize for not knowing this – in response to your motions, did the plaintiffs move to amend their pleadings? No, Your Honor. Okay. Thank you. I don't believe so. Under Ohio law, one partner would have the right to do exactly what the plaintiff in this case did. Is that right or wrong? Well, Your Honor, that sort of begs the question as to whether there was even a partnership at all. And what – Well, assume for these purposes that there is one. While a partner cannot take something from another, it would have to be partnership property, and therefore he would be taking something from the partnership. And in this case – Well, whose property was the car in this case? In this case, all of the information that Detective Hawkins had was that it was Mark Harris' vehicle and not partnership property. In fact, he had a title, but it was titled to Mark Harris. And that title was not forged, right? So that was – whether Harris did something inappropriate, the title was a true title. Is that accurate or inaccurate? That is accurate, Your Honor. And no one disputes that? I think that the dispute is whether he properly put it in his name. Right, but that's a different question. That's different, yes. No one's forged the title. He went and got the title, whether he did so appropriately. When the officer got it, it was a proper title. It wasn't forged. Correct. Okay. And why that was important and why Detective Hawkins could – was not in a position to make that determination is because Detective Hawkins had a sworn statement by Bradley Crofter in this case, and that's Exhibit 4 to the complaint. And in that, the sworn statement says that he drafted this initial agreement, this agreement that's put forth as Exhibit 1 that the plaintiff relies upon and that the court below looked at. And what he specifically said is he drafted that in order to move Dr. D. Casquale to do the promised partnership, in other words, implying there wasn't a partnership at that point. And in fact, if you look at that document that purports to be this partnership agreement, it's set forth specific ways that they deal with disputes, specific ways that things are going to be handled. And none of the information that Detective Hawkins had before him was that any of that had been followed by anybody, so there was no reason to believe that there was a partnership in place. He had a statement by Bradley Crofter who said the whole point was this partnership hadn't moved forward. And in fact, the decision to purchase this vehicle was made by him and Mark Harris before they ever even talked to Dr. D. Casquale. Well, as Mr. Crofter acknowledged in his statement that the car was purchased with funds derived from the Marco Motors business account, right? He withdrew himself, and that's the funds that were used to purchase the car. So – and he went further to say, though, that once they purchased the car with that $8,000, which was Mr. Crofter's portion of the money put in, that they held onto the vehicle again because they were waiting to see if this partnership that they discussed was – they held it – they held the title as collateral until CP, meaning Mr. D. Casquale, created the promised formal partnership agreement and added this to the bank account as promised. No formal business agreement was ever executed to date. So what Detective Hawkins had before him is there wasn't this partnership there, so it wasn't a question. But it seems to me that arguably he should have – he would have been aware, at a minimum, that there was a dispute about the legal existence. But he'd also been provided materials by the plaintiff's attorney demonstrating the business venture. So at least there would have been question in his mind about the story he could have been told by Crofter, it would seem to me. Now, what's wrong with that? Well, he had the statement of Mark Harris, first of all. He had a sworn statement from him. He had the title to the vehicle on Mark Harris's name. He had a statement by Mr. Crofter saying there wasn't a partnership at that point, that the vehicle had been taken by D. Casquale. Yes, he had information from Dr. D. Casquale's attorney that said, no, my client didn't do it. No, this is the case. But police officers have that all the time. What he had, though, was sufficient probable cause, probable cause that was ultimately determined in the indictment against him, that there was a theft offense here. He had a vehicle that he had information that the owner was Mark Harris. He had, frankly, no one disputing that Dr. D. Casquale had taken the vehicle, had taken it without permission, wasn't returning it, and did it by deception, did it without anyone knowing. So he had sufficient information for probable cause at that point. That information was what was presented to the grand jury, and in fact the grand jury indicted him. Was there a prosecutor involved? Yes, Your Honor. And the prosecutor made the call. Is that accurate? Whether to prosecute? Who makes the – go ahead. Frankly, Your Honor, it's not fled in the complaint, but I think the courts have traditionally recognized that that's a call made by the prosecutors. What is fled in the complaint that can sort of lead you to that inference is that during the trial or the pretrial proceedings, there was a discussion about a dismissal of the case if the car was returned and specifically alleges that the prosecutor declined to do that. There's no indication that Detective Hawkins was present, knew about that, or had anything to do with that. I don't know for sure, though, that a prosecutor was even – or it's not alleged that a prosecutor was even involved in the decision to go forward. I mean, I think there's some jurisdictions where a complaint signed by a witness such as Mr. Hawkins would be enough to let the matter go forward to a point. So the prosecutor might or might not have been involved in the initiation of the proceedings. Would that be true on a felony charge in your state? Would that be true on a felony charge, that you could bring a prosecution on an officer's affidavit? I mean, I know that's sometimes true in misdemeanor charges. I'd be interested to know if that would be true. But this was a felony charge, correct? And I'll be honest. I don't normally practice criminal proceedings. It is my understanding that, at least in this jurisdiction, that it would be a decision by the prosecutor. You don't know? Your Honors, I know because, in fact, the pleadings do state in paragraph 37, the assistant Montgomery County prosecutor rejected the offer to dismiss the charges in exchange for the return of the vehicle. I know the prosecutor was involved by that point. I mean, Judge Larson is quite probably correct. I'm just asking whether there's anything in the complaint that has anything to do with the presence of a prosecutor at the moment of decision-making about going forward. It is not pled in the complaint, Your Honor. But clearly, it is pled in the complaint that at some point the prosecutor could have made the decision to dismiss and did not do so. Can I ask one more question? You have both an absolute immunity argument and an argument on qualified immunity. Does it matter to your clients if we were to rule in your favor? Is there some reason you would prefer that we were to rule in absolute as opposed to qualified immunity? Does it make any difference? Well, ultimately, it doesn't to the extent that he is immune. I think that it's important that the absolute immunity is the first thing to review because of the precedence in this case, because of what we're looking at, because of the pleadings in this case that only go to testimonial acts here in terms of any false statements or alleged false actions by my client. Ultimately, there is still – it was a claim that was dismissed, but a civil conspiracy claim that arguably may come back on appeal on behalf of the appellee. And to the extent my client would be determined to be absolutely immune, I think that that would bar that coming back. So I think with that respect, I would say that's the most important. But I think immunity is immunity. So thank you. Thank you. May it please the Court. My name is Larry Greger. Myself and co-counsel Mitch Anderson are here to represent Dr. DePasquale. I was plaintiff's counsel in the underlying criminal action State of Ohio v. Dr. DePasquale. So you practice criminal defense? Do I? Yes. I do. So you know that under Rule 6d in Ohio, the Ohio criminal rules, that the prosecutor presents evidence to the grand jury. I do, Your Honor. Okay. And to go farther than that, the only way that it comes to the prosecuting attorney in Montgomery County, Ohio, is because a police report is generated at a local jurisdiction that then comes before the prosecutor for the approval of charges. Right. And prosecutors often make the – in fact, prosecutors always make those determinations whether to bring charges based on the evidence presented to them. Correct? That is correct, Your Honor. However, this court in Sykes v. Anderson said that an investigating officer does not escape liability just because someone else, for example, the prosecutor, made the actual decision to prosecute so long as the plaintiff can show that the officer influenced or participated in the decision to prosecute. That's absolutely true, but my point is just to clear up our earlier confusion. In felony cases in Ohio, a police officer cannot convene a grand jury and produce an indictment. It takes a prosecutor to do it. It does. However, that law enforcement officer can participate. Of course. And influence. Yeah. No one's disputing that. So can we go to your complaint? Because that's their big beef, is your complaint. And can you show us in your complaint where you allege that Hawkins was involved and participated in – in the language you just used – the decision to prosecute? And what facts support that claim? First of all, may I go back to your prior question to Ms. Frick about what's the import of the attachments? No. I just – I want you to answer my question first. Then you can go to that. The attachments, Your Honor. First of all – Wait. Where does it say in the attachments that he was involved in the decision as to whether to prosecute? The language you just gave me. I understand there's the attachments, and I understand he handed those attachments over. What I'm looking at is the body of the complaint to get the facts to understand what the significance of the attachments is. Maybe that's a better question. Show me in the complaint where I can read what he did with these attachments, how he was involved with the attachments, how he knew if they were true or false. Can you show me that in here? Because I haven't seen it, and I'm probably missing it, but I'd like to find it. Your Honor, in the attachments that are, for Rule 10 purposes, part of the pleadings for all purposes in response to your question, Detective Hawkins is the person who actually signs the block that says sworn to and acknowledges what is a false statement by Proctor given to him on October the 23rd of that year. Hold on. So, take me to that attachment and let's talk about it. You're talking about Exhibit 4, I assume? I am, Your Honor. Okay. And so all he says here is that the statements contained in these pages are true, right? Correct, and they're not. Okay, wait a minute. That is Proctor, right? No, Proctor signs on the right-hand side. Detective Hawkins is the person who affixes… No, so look at the language. Do you have it? I think this is important. Okay. Proctor swears the statements are true. Yeah, Proctor does swear, but Hawkins is the person who affixes his signature. Hawkins says sworn to and subscribed before me. Correct. So, on the left, that's the… Every officer in America signs that. So, if a guy comes in, the officer doesn't know, and he says Judge Tappar punched Judge Larson, and he swears to an officer, it occurred. And the officer signs sworn to and subscribed before me, and I never punched her. And he presents it to a prosecutor and says, geez, these two judges, and the prosecutor brings charges against him. The officer is responsible for malicious prosecution? Not on that act alone, but that's an act of participation in the prosecution. By simply taking… So, every day in America, every officer for any false prosecution is liable for malicious prosecution just by taking statements? No, not when he knows that the statement's false. Yeah, but where's that? That's what we're looking for. Where's that? You have to connect those dots. Your Honor, we… Where's that allegation? We alleged, and the district court found, that the statements of Harris and… Wait, wait. We don't care what the district court found. We're reviewing what they did. Where in your complaint does it say that, that he knew these statements were false? The best I can give you, Your Honor, is it's a reasonable inference from knowing that the statement that was sworn to was false based upon the investigation. That's fair. Where does it say that? Well, that's… An inference arises from the pleadings themselves. What paragraph can I draw that inference from? From the investigatory file. No, no, no. Paragraph 32. Well, 32 reads, and I'm looking right at it. Hawkins, having in his possession the materials gathered by Officer DeVore and the statement of Proctor, presented the case to the grand jury. And then the rest was clearly covered by grand jury immunity. So, he presented the case to the grand jury. No one here disputes – they don't dispute that. But where does that say that he did anything improper? He had in his possession false statements. Okay, where does it say that? He knows they're false from the investigatory file that he inherited from Officer DeVore. That's a reasonable inference that arises because DeVore himself… Wait, where does it say that he knew they were – this seems like a reasonable allegation. Like I bet I could find 50 malicious prosecution complaints, and I bet in those 50 they would say the officer knew the materials were false and then handed them over. It seems like a reasonable – they could make that – like they could say, tell us what we knew was false. That's what non-displeading is about. Probably – I'm not trying to throw you the lifeline because I'm not sure that this is a lifeline. But would paragraph 56 be the closest that the complaint comes? And can I ask you about that while you're there and answering Judge Gibbons' question? Count 2 was dismissed, you didn't appeal it, and it isn't incorporated in Count 1, correct? Your Honor, we can't appeal. Okay, fair point. It's a derogatory appeal. That's a fair point. You didn't incorporate it in Count 1. But you can answer her question too. Each paragraph of the cause of action starts with the – Yeah, look at the incorporation. 1 through 53 is incorporated. 1 through 43. 1 through 53 is what I found on page 7. It depends on which cause of action. The malicious prosecution is the first cause of action. Is that a fair reading? It is. Okay. 1 through 43 is incorporated in that. But irregardless of that, let's say you can make – let's say you're allowed to do this in Ohio. Because you have an amendment. Is that fair? No, we dropped a footnote in and it said, if the court finds that we have not sufficiently pled, we move to amend our complaint. That was completely unaddressed by the district court. Okay. All right. So you have an amendment is the answer to my question. The answer is we have not amended because we were not given leave to do so. Okay. Look at paragraph 56 now and answer it. You can answer David's question. I apologize, Your Honor. Is there a question on the table? Yeah. So did – so where in this – is this your – she's trying to throw you a lifeline, right? I said, would paragraph 56 be the best thing we could find in the complaint? That's the question. Now, I mean, as Judge DeParle's further questioning has pointed out, there might be some issues with that. But for right now, just focus on the question without focusing on the other issues. Yes, Your Honor. Okay. So can we talk about paragraph 56? Yes, Your Honor. We can. So among other acts, having the title wrongly placed in defendant's Harris name would defend Hawkins' full knowledge. As I understand it from your own complaint – I can't remember which paragraph, but I promise I'll find it. Hawkins was not involved at the time the title was placed in defendant's Harris name. Is that correct? I think that is, Your Honor. And then filing written statements with law enforcement – well, as the basis to present the case to the grand jury and obtain criminal indictments, the filing of written statements with law enforcement, you're talking about the other defendants filing written statements with Hawkins. Hawkins didn't make a written statement of his own, did he? No, he authored a police report on the 24th. Right. But he didn't make a written statement. He just did a police report. He did a narrative in the police report, Your Honor. Fair. So when it was filed with law enforcement, this is the other defendants, I assume. Or is it something else? No, it's a proctor and Harris filing with Detective Hawkins. Right. Okay. And those statements were the ones we just discussed, or at least we discussed proctors. Yes, Your Honor. Okay. Is there anything else in here I'm missing? Because I may be in this paragraph. I'm sorry. Not in this paragraph. All right. I'll let you go on, and I'll be quiet. That's okay. I would like to revisit the recent jurisprudence that occurred in this case while in this court, Sanders v. Jones. Sanders v. Jones went to the United States Supreme Court. It was summarily reversed. It came back, and Judge Sir Heinrich, Griffith, and Rogers issued an order on April the 4th of 2018 indicating that they may not have jurisdiction over this interlocutory appeal because, as Ms. Frick argued, as she stood here in front of you, this is intertwined with so many facts that the only way this court can get to qualify immunity is on the matter of law. Do we not have jurisdiction over absolute immunity? Your Honor, page 17 of the appellant's brief acknowledges that they got absolute immunity in the district court. I don't think they have jurisdiction over the absolute immunity at all because that was granted to them in the underlying proceedings. So what year? Go ahead. I mean, the absolute immunity was granted to them as to one claim. As to only the grand jury testimony. Right, but the question for you is whether it should have extended more broadly because it was the claims related to the grand jury testimony. Your Honor, there is no absolute immunity for the non-testimonial acts taken by Detective of a decision in its favor, citing Hensley v. Gassman. Even if this court finds it has jurisdiction to hear some portion of the absolute immunity issue, the simple fact that acts may ultimately lead to witness testimony does not serve to cloak these actions with absolute testimonial immunity. That was Spurlock v. Satterfield from this court in 1999. Spurlock leads us directly into this issue. The qualified immunity was denied by the district court because the defendant violated the Constitution on the right and the right was clearly established. So why wouldn't that be appealable? I'm not sure I follow. I'm sorry. Why wouldn't the qualified immunity ruling be appealable? As Judge Sir Heinrich said in the Sanders v. Jones case, because this case turns on factual dispute, we lack interlocutory jurisdiction. A district court's denial of qualified immunity is an appealable final decision under 1291 only, quote, to the extent that it turns on an issue of law, end quote. Quoting the State of Carter v. the City of Detroit, 408-3305, a Sixth Circuit case from Can you give me the Sanders side? I'm sorry. I'm sorry, Your Honor. What I've got is the court's That's fine. Whatever you give me, I'll take. The case number is 15-6384, order issued on April 4, 2018, Circuit Judge Sir Heinrich. I don't really see how that applies here. I mean, that is a frequently invoked rule when we're looking at maybe a summary judgment record or something from their facts that turn out to be in dispute. Here, we're dealing with a complaint, and we're talking really about the adequacy of the complaint as a matter of law to allege a cause of action to which qualified immunity does not apply. Your Honor, if I may briefly Does not apply, I suppose. In considering the defendant's motion, the court had to construe the complaint liberally in the plaintiff's favor except as true or factual allegations and permissible innocence. Which is why Judge Sir Heinrich's point is inapplicable here. We're taking the facts as you allege them. And because there are factual disputes because they answer denying those facts. I'm not sure that this court has No, no, no. You're not listening to Judge Gibson's question. We ignore their denials. We take the facts as you allege them. That's why we're looking to find if you've got sufficient facts for them to be denied qualified immunity, right? Think of a summary judgment fight. They can appeal a denial of qualified immunity after summary judgment. Of course, summary judgment is, they're disputing things. But we take the facts in the light most favorable to you and then determine if, taking the facts that way, are they still entitled to qualified or absolutely immune? And because we think it's a clearly established constitutional right. Right, that's just the analysis. I think probably your time's been up for a while because I've been listening instead of watching the light. If nobody has any other questions. All right, we'll have you with the ball. Thank you, Your Honor. Thank you, Your Honor. I think you pointed out an important thing with respect to the Sanders case that was on summary judgment. And that does distinguish that because there were the facts at issue here. And here we're looking at the complaint. In this particular case, with respect to the issue on absolute immunity, Judge Larson, you're correct. We believe that there were not sufficiently pledged facts to say that there were non-testimonial acts, such as those that this court has laid out in King v. Harwood, that would get beyond the grand jury testimony to get past the absolute immunity. There's no factual allegations of any knowingly or recklessly made false statements by Detective Hawkins. That there was any, in conjunction with those false statements or affidavits, that there was misleading omissions or that were material to the prosecution of the complaint, or that false statements, evidence, and omissions did not consist solely of the grand jury testimony or preparation. Here, the only allegations in the complaint of false statements made by or presented by Detective Hawkins were those that were made in the grand jury testimony. That's exactly what the court in Rayburg and this court has followed up in King v. Harwood and even in Jones v. Clark County. That is absolutely immune. But even looking beyond that on the qualified immunity, they haven't sufficiently pledged that there was a constitutional violation. There is no, not sufficient allegations that Detective Hawkins may have participated or influenced the decision to prosecute. But also, again, because there was probable cause, which is determined by the indictment, and there is not sufficient facts put in the complaint to get past that indictment. This court specifically held in the King v. Harwood case last year that where a grand jury indictment has been issued, a plaintiff must plead specific facts showing a defendant officer made false statements or fabricated evidence that set the prosecution in motion. Without more, a plaintiff cannot rebut the presumption of probable cause established by the grand jury indictment. And it's our position that the complaint in this case does not have those specific, sufficient facts to get beyond the probable cause finding of the indictment. Your opponent says that he asked the district court for leave to amend and that the district court ignored that and didn't grant leave to amend. So what should we make of that? Your Honor, I apologize. I did not recall that that footnote was in their motion, but it's our position that by not ruling that, that is, in effect, a denial of that request and that the district court adopted the magistrate's decision with respect to the pleadings and the motions for judgment on the pleadings. Well, the district court didn't need to rule on that motion, given it's ruling on the case overall. I mean, I would like to concede that that's correct, Your Honor. I think the district court could have because this malicious prosecution claim was left against my client. But I think by not ruling on it, the court essentially had determined that leave was not granted. We thank you both for your argument, and we'll consider the case carefully. Thank you.